# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA       :
           :
     v.            :     Criminal Action No.: 17-0050 (RC)
           :
DAVID LIEU,         :     Re Document Nos.:   50, 52
           :
     Defendant.     :

## <u>MEMORANDUM OPINION</u>

### GRANTING UNITED STATES' MOTION TO ADMIT OTHER CRIMES EVIDENCE [50]; DENYING DEFENDANT'S MOTION TO SUPPRESS [52]

## I. INTRODUCTION

Defendant David Lieu is charged by Superseding Indictment with one count of distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). *See* Superseding Indictment, ECF No. 48. The Government alleges that Mr. Lieu engaged in a series of electronic communications with an undercover detective who was posing as a father of a fictitious nine-year-old girl and that Mr. Lieu made arrangements to meet the fictitious father and child for the purpose of engaging in illicit sexual activity with the daughter. This matter is presently before the Court on two related evidentiary motions. First, Mr. Lieu moves to suppress a variety of evidence based on his claim that the Government violated his constitutional protections under the Fourth and Fifth Amendment. *See* Def.'s Mot. Suppress ("Def.'s Mot."), ECF No. 52. Second, the Government moves to admit evidence that Mr. Lieu (1) possessed child pornography at his home, (2) had previously sexually abused his stepdaughter, and (3) was communicating with someone, contemporaneous with his conversations with the undercover detective, about his sexual interest in children. *See* United States' Mot. Admit ("Gov't Mot."),

ECF No. 50.  For the reasons stated below, the Court will deny Mr. Lieu's motion to suppress

and grant the Government's motion to admit the evidence of the prior bad acts, subject to a

limiting instruction.

## II.  BACKGROUND

### A.  Allegations of the Instant Offenses

The Government intends to prove the following allegations at trial.  In the winter of 2016,

Detective Timothy Palchak was acting in an undercover capacity as part of the Metropolitan

Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force.

In that role, he posted an online advertisement on Craigslist intended to attract individuals with a

sexual interest in children.  The advertisement read: "Any other young perv dads into no limit

taboo stuff, shoot me an email or leave me your kik, don't want to say to[o] much on here."  An

individual with the profile name "Dave Loof" answered the ad via email, stating "[h]ey, I'm

totally a taboo/pervy dad.  Yeah, I'm into that.  What's on your mind[?]"  Detective Palchak, in

his undercover capacity, responded, "looking to meet other [young] dads that are into

[young]/incest, etc." and asked for the individual's username on an instant message platform

known as "KIK," which "Dave Loof" supplied.

Thereafter, Detective Palchak initiated a conversation on KIK, telling the now-target of

the investigation that his name was "John."  The target, whose KIK username was "Dave Ell,"

told Detective Palchak that he was a 42-year-old man from "Nova"[1] interested in "incst/yng."

Detective Palchak asked the target whether he had "any lil ones."  Detective Palchak indicated

that he himself had a nine-year-old daughter.  "Dave Ell" responded "[w]ow! . . . hot" and noted

---

[1] "Nova" is a common regional shorthand used to reference "Northern Virginia."

that he had two stepchildren, ages eleven and fourteen.[2]  "Dave Ell" then asked the detective for details of any sexual acts that the detective had engaged in with his supposed nine-year-old. Detective Palchak stated that he and his fictional daughter had engaged in reciprocal acts of oral sex on one another.  The target responded "Omfg. . . . . HOT," asked whether she "like[d] it," and said that the detective was a "lucky dawg."  "Dave Ell" also asked if the detective had any pictures.

Detective Palchak then turned to the subject of "Dave Ell's" activities.  Detective Palchak asked whether "Dave Ell" ever got "any play or peeks" of his stepdaughters.  The target responded that he "used to . . about 4 ye[ar]s ago.  Less now but get peeks."  He also indicated that he did not have any pictures of his stepdaughters because "mom is watching like a hawk." Detective Palchak asked whether he had "[p]ics of any of what we like," to which the target responded "Plenty.  Just not of mine."

"Dave Ell" then raised the possibility of meeting in person.  He first asked whether the detective had ever done a meeting before.  Detective Palchak stated that he had come close once before, but it never came to fruition.  He explained that he "was disappointed because [he] was looking forward to it and she [referring to his fictional daughter] actually was too."  "Dave Ell" responded "Damn. . . .  I'd be more than happy to help out with that."  Detective Palchak indicated that he "may be interested," but he would have to know that "Dave Ell" was "safe" by getting some sort of proof.  Detective Palchak asked, of the pictures that "Dave Ell" had, what the age was of the youngest child.  "Dave Ell" indicated that the youngest was probably six years old.

_____

[2] "David Ell" indicated that, for purposes of the chat, he wanted to reference the ages of children using an age multiplier, presumably to obscure the fact that they were discussing children.

The two then agreed to trade pictures. Although he initially indicated that he did not have any pictures of his stepdaughters, "Dave Ell" indicated that he "[a]ctually found one" from when one of his stepdaughters was seven years old. He then sent Detective Palchak an image of a naked girl who appeared to be approximately seven years old and was date stamped May 2009, which is consistent with the actual age of Defendant's daughter at that time. Detective Palchak then sent two images of his purported nine-year-old daughter, though the images in actuality were not of a real child. "Dave Ell" responded with comments like, "[n]iiice," "[d]amn hot," and "[g]od she looks delicious!" He also asked sexually explicit questions about the child like, "[d]oes she like getting licked" and "[e]ver rub it on her own face?"

Detective Palchak noted that he sent the images so that "Dave Ell" would know that he was "real/cool" and indicated that "a pic or 2 more from u will be all I need the[n] we can talk about meeting up." "Dave Ell" responded, "let me find some more proof for ya." After apparently looking for additional photographs, he stated "[d]amn . . . all the ones I have are on another computer," which he claimed was "in [his] NY apartment." Nevertheless, Dave Loof asked to switch their conversation to Yahoo Messenger, where he said he could share "some tamer ones."

The two then moved their conversation to Yahoo Messenger, where the target used the username "roll8mi." At that point, the target sent Detective Palchak several images of child erotica[3] and three images of child pornography. Each of the three images of child pornography involved naked pre-pubescent girls between the ages of six and twelve years old posing in

---

[3] Child erotica is generally understood to mean materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

sexually explicit positions. Thereafter, "roll8mi" asked Detective Palchak if he had ever seen "vicky videos." Detective Palchak understood the target to be referring to the child pornography series involving the well-known child victim "Vicky." The target indicated that he had a few of her videos, but "lost most of the good ones." Detective Palchak asked if "roll8mi" had "any of those on [him]," to which "roll8mi" responded, "no . . . in my other computer."

As the conversation progressed, "roll8mi" began to discuss having sexual contact with his stepdaughter. He claimed that he started with his oldest stepdaughter when she was seven years old. He said it "started out when [he] put her to bed one night." He claimed that "she put her hand on [his] thigh and started creeping up." He said, "as soon as she did that mydick started creeping to meet her hand" and "she made contact and played some that night." He emphasized that "the anticipation of what she would do next was enough to make [his] heart jump out of [his] chest." The target said that he "took it slow from there but she never went much further."

Detective Palchak and "roll8mi" then began to arrange a meeting for the next day, when Detective Palchak told the target he would have his supposed daughter. The target indicated that he had to be in Owings Mills, Maryland until around 3:00 p.m. or so, but that he would be free after that. Detective Palchak stated the he had to work until about 3:30 p.m. and said that they "could meet at a bar near [his] apartment[,] grab a drink and then go back to [his] place and have fun with her." The target replied, "that would be sweet." Detective Palchak then asked "roll8mi" what he would be "interested in doing." The target said he would "do everything except cross your limits." Detective Palchak said his "only limit is fucking," and "everything else is cool." "Roll8mi" asked if "rubbing" was alright, to which Detective Palchak indicated that it was, as was "all licking sucking and fingering." "Roll8mi" replied that he was "good with that" and that he "really love[d] licking and tasting anyway." He noted that he hoped they

could "play for a good long time." The two then traded cell phone numbers and noted that they looked forward to meeting one another.

The next day, February 4, 2016, the suspect sent a text message to Detective Palchak stating that he could be at the designated bar in Washington, D.C. around 3:30 p.m. When Detective Palchak indicated that he had told his daughter that he "might have company," the target responded "[a]wesome. . . . . so she's expecting to play then :-)" He also expressed great enthusiasm for their upcoming meeting, making statements like "damn I'm excited" and that he had "[n]ever been so eager :-)"

Later, the suspect sent Detective Palchak a text message stating that he was leaving and expected to arrive at the designated bar around 4:00 p.m. The detective described his clothing and stated that he would wait for him inside at the corner of the bar. The target noted that he would be wearing a "light sport coat with blue grey slacks." At approximately 4:00 p.m., Defendant Lieu arrived at the bar and immediately approached Detective Palchak. The Detective surmised that Mr. Lieu was the suspect he had been communicating with based on the clothes that Mr. Lieu was wearing at that time. Detective Palchak then asked if he was "Dave," to which Mr. Lieu replied yes. Mr. Lieu then asked whether the detective was "John." Detective Palchak responded affirmatively and asked whether Mr. Lieu was looking forward to later, and Mr. Lieu indicated that he was. At that point, members of the Child Exploitation Task Force placed Mr. Lieu under arrest, searched his person, and recovered, among other things, a cellular telephone and a driver's license with a stated address in Camillus, New York.

Based on this alleged conduct, Mr. Lieu is now charged with one count of distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of travel with intent to

engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b).  *See* Superseding

Indictment, ECF No. 48.

### B.  Subsequent Investigation

#### 1.  Mr. Lieu's Interview with FBI Agents

Following Mr. Lieu's arrest, he was interviewed by FBI Agent Alicia McShane and FBI

Agent Jenny Cutalo-Patterson.  At the beginning of Mr. Lieu's interview, and before asking him

any questions whatsoever, Agents McShane and Cutalo-Patterson advised Mr. Lieu, both orally

and in writing, that he had a right to remain silent and that he had a right to have an attorney

present.  Mr. Lieu orally represented to the agents that he understood those rights and that he was

"willing to cooperate."  Mr. Lieu initially represented, however, that he wanted to have a lawyer

before proceeding with the interview.  But moments later, and without prompting from the

agents, he indicated that he wanted to "try to have a conversation" so long as he could answer

only the questions that he was comfortable with.  The agents agreed that he could do so and that,

in fact, he was entitled to do so.  Given that he had previously requested a lawyer and then asked

to have a "conversation," the agents asked whether he was, in fact, waiving his right to a lawyer

at that moment.  Mr. Lieu said he wanted to "run through the questions" and would defer on any

questions he felt he could not answer on his own.  The agents told Mr. Lieu that they understood

this response to mean that he was waiving his right to an attorney for the time being and asked

Mr. Lieu if their understanding was correct.  He indicated that it was.  Agents then proceeded to

ask Mr. Lieu several questions, some of which Mr. Lieu was willing to answer and others that he

was not.  Throughout all of this, the agents emphasized at multiple points that any refusal to

answer questions was within his right and would not change anything that would happen to him

going forward.

During the interview, the agents noted that Mr. Lieu had a New York driver's license. Mr. Lieu affirmed that his primary residence was in New York and that he had a wife, two step-children, and a biological child. Mr. Lieu also explained that he was in the D.C. metropolitan area on business and had traveled from a meeting in Maryland to the District of Columbia to meet "John." Mr. Lieu was not willing, however, to answer any further questions about how he met "John" or the reasons for which he was meeting him. Based on Mr. Lieu's unwillingness to answer these types of questions, the agents decided to end the questioning.

2. Execution of Search Warrants

On February 8, 2016, based on the facts alleged above, a United States Magistrate Judge from the Northern District of New York issued a warrant authorizing law enforcement officials to execute a search of Mr. Lieu's home in New York. Pursuant to the warrant, law enforcement sought evidence that Mr. Lieu possessed child pornography in violation of 18 U.S.C. §§ 2252 and 2252A and were permitted to seize, among other things, computers and other electronic media devices that might contain such evidence. That same day, the warrant was executed and several computers and other electronics were seized, including an external hard-drive that contained 397 images and 19 videos of child pornography, including approximately 41 media files of the "Vicky Series."

In addition to the search of Mr. Lieu's home, federal agents also secured a warrant authorizing the forensic examination of the phone that officials seized from Mr. Lieu's person upon his arrest. That examination revealed the conversation that had taken place with Detective Palchak, but also electronic communications that Mr. Lieu had with another individual, hereinafter referred to as John Doe. These other communications began on February 3, 2016, the same day that Mr. Lieu began corresponding with the undercover detective.

This conversation, like the one with the undercover agent, was initiated by Mr. Lieu in response to an advertisement posted on Craigslist that sought other individuals who were interested in "taboo." In his initial email to John Doe, Mr. Lieu emphasized that he was into "young" and "taboo." During this conversation, Mr. Lieu and John Doe exchanged stories of sexually abusing minors and enthusiastically discussed their mutual sexual desires involving children. For his part, Mr. Lieu admitted that he had had an "experience" with his stepdaughter when she was approximately seven years old and stated that he "wish[ed] it coulda gone further than it did." And although she was now older, he claimed that he still caught "glimpses" of her and stated that the child "[s]eems to have amnesia about it all."

Mr. Lieu also told John Doe that he was supposed to meet with a nine-year-old that evening. Mr. Lieu indicated that he was "[v]ery excited about it" and that he "was almost shivering uncontrollably" the night before. Mr. Lieu told John Doe, that if it went "well," he would "see about expanding [the] circle to include" him. Mr. Lieu and John Doe ultimately exchanged personal email addresses and made plans to meet in person after Mr. Lieu's encounter.

### 3. Interview with Mr. Lieu's Oldest Stepdaughter

Based on Mr. Lieu's statements that he had sexually abused his oldest stepdaughter, law enforcement officials in New York decided to interview the child. The child initially told investigators that, one time, when she was in the fifth grade, she was getting out of the shower when she noticed that Mr. Lieu was in the bathroom with her. She claims that he looked at her naked body and told her that she was beautiful.

The child also recounted other events that occurred starting from the time she was about seven years old. The child told investigators that, at that time, Mr. Lieu began something he

called "national naked day." On these "national naked days," Mr. Lieu would apparently have the child run around the house naked and then later they would both lay naked in bed together. Mr. Lieu allegedly warned the child that she was not allowed to tell anyone about these exploits. Investigators asked her if Mr. Lieu had ever touched her during one of these days, but she initially claimed that she could not remember anything else. Several months later, however, she asked to speak with police again. This time, she informed them, consistent with Mr. Lieu's accounts, that Mr. Lieu had engaged in sexual acts with her from the time that she was seven years old until she was approximately ten. Specifically, she claimed that Mr. Lieu would "tuck her in" at night and have her touch his unclothed penis before bed. This behavior suddenly stopped, however, after the child began openly taking about "national naked day."

### C. The Current Motions

This case comes before the Court on two evidentiary motions. First, Mr. Lieu claims that the Government violated his constitutional rights under the Fourth and Fifth Amendments and that, therefore, certain evidence must be suppressed. Specifically, Mr. Lieu seeks suppression of his cellular telephone, statements that he made to federal agents following his arrest, and the various electronic devices that were seized from his home. The Government, on the other hand, moves to admit evidence of Mr. Lieu's prior acts under Rules 414 and 404(b) of the Federal Rules of Evidence. Specifically, the Government seeks to introduce evidence that Mr. Lieu (1) sexually abused his step-daughter when she was between the ages of seven and ten years old, (2) possessed 397 images and 19 videos depicting child pornography, and (3) communicated simultaneously with someone else about his sexual interest in children at the same time he was communicating with the undercover agent. Gov't Mot. at 1. Both motions have now been briefed and on January 18, 2018, the Court heard oral argument from the parties.

# III. ANALYSIS

The Court first considers Mr. Lieu's motion to suppress. In broad strokes, Mr. Lieu essentially presents three arguments for why certain evidence should be suppressed. First, Mr. Lieu argues that, notwithstanding what was said in the communications to Detective Palchak, the agents had neither a warrant nor probable cause when they arrested him because they could not at that time have been sure he was the person who had generated the messages in question. Accordingly, he argues that this arrest violated his Fourth Amendment right against unreasonable searches and seizures and that any evidence stemming from his arrest is fruit of the poisonous tree and must be suppressed. Second, Mr. Lieu argues that the agents violated his rights under the Fifth Amendment because he invoked his rights under *Miranda v. Arizona*. For this reason, he argues that his post-arrest statements must be suppressed. Finally, he argues that, because his post-arrest statements were used to support the warrant application for his home and the application did not declare that the statements had been obtained in violation of his rights, the warrant application was necessarily defective and any evidence obtained as a result of that search warrant should be suppressed.

For the reasons stated below, the Court rejects each of Mr. Lieu's contentions. Specifically, the Court finds that the circumstances known to the agents at the time of Mr. Lieu's arrest were sufficient to support a finding of probable cause. Therefore, there was no violation of Mr. Lieu's Fourth Amendment rights with respect to his arrest or the search of his person. Moreover, the Court finds that there was no violation of Mr. Lieu's Fifth Amendment rights because, after being advised of his right to remain silent and his right to an attorney, Mr. Lieu made a voluntary, knowing, and intelligent waiver of those rights when he decided to speak with the federal agents. For that reason, the affidavit supporting the warrant to search Mr. Lieu's

home was not defective and, in any event, the warrant contained sufficient factual underpinnings to support a probable cause determination even in the absence of Mr. Lieu's post-arrest statements. Accordingly, the Court finds no basis to suppress any evidence and consequently denies Mr. Lieu's motion.

The Court then addresses the Government's Motion to admit evidence of certain prior acts under Rules 414, 404(b), and 403 of the Federal Rules of Evidence. Specifically, the Government seeks admission of evidence that (1) Mr. Lieu possessed child pornography at his home, (2) Mr. Lieu had previously sexually abused his stepdaughter, and (3) Mr. Lieu, contemporaneous with his communications with the undercover detective, was also communicating with someone else about his sexual interest in children. The Court finds that each of these categories of evidence is variously admissible under Rules 404(b) and 414 as to each of the charges currently pending against Mr. Lieu. However, the Court will endeavor to ensure that the admission of this evidence is not unduly prejudicial by instructing the jury concerning the purposes for which they may consider this evidence.

### A. Mr. Lieu's Arrest and Seizure of Items from His Person

Mr. Lieu argues that the agents "lacked both a warrant and probable cause to seize, search[,] and arrest Mr. Lieu." Def.'s Mot. at 4. For this reason, Mr. Lieu argues that any evidence seized from his person, any statements that he subsequently made to police, and any other evidence that might have flowed from his arrest must be suppressed. *See* Def.'s Mot. at 4. For the reasons set forth below, Mr. Lieu's arguments fail.

The Fourth Amendment guarantees that the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Thus, all seizures must be

"founded upon reasonable, objective justification." *United States v. Gross*, 784 F.3d 784, 786 (D.C. Cir. 2015) (internal quotation marks and citations omitted). "[W]hen the government conducts an unconstitutional search or seizure, the Court must exclude any evidence obtained as the 'fruit' of that search or seizure." *United States v. Sheffield*, 799 F. Supp. 2d 22, 28 (D.D.C. 2011) (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)).

Courts have expressed a judicial preference for arrests that occur as a result of warrants, where probable cause has been evaluated dispassionately by a magistrate judge. However, a "warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citing *United States v. Watson*, 423 U.S. 411, 424 (1976)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152, (citing *Pringle*, 540 U.S. at 371). "The quantum of information which constitutes probable cause—evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed—must be measured by the facts of the particular case." *Wong Sun*, 371 U.S. at 479 (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

In this case, the various communications between Detective Palchak and the target of the investigation gave law enforcement reasonable grounds to believe that the suspect with which they had been conversing had distributed child pornography and intended to engage in sexual relations with a minor. Mr. Lieu does not dispute this. Rather he argues that the officers were unreasonable in believing that he was the person who sent the messages. Mr. Lieu premises his argument on the fact that, prior to his arrest, law enforcement did not know exactly what he looked like. But, the confluence of several factors made it eminently reasonable for officers to

believe that he was the person responsible. To start, Mr. Lieu arrived at the designated location at the designated time. Once inside, Mr. Lieu immediately proceeded to a specified location in the bar and approached the detective—a man that Mr. Lieu obviously did not know. Moreover, the target of the investigation had indicated that he would be wearing a "light sport coat with blue grey slacks," which matched the clothing that Mr. Lieu was wearing at that time. Furthermore, in the short conversation that then ensued, Mr. Lieu confirmed that his name was "Dave"—the same name the target gave to the detective—and asked if the detective's name was "John"—the fake name that the detective had supplied. And when Detective Palchak—again, a stranger to Mr. Lieu—asked whether he was "looking forward to later," Mr. Lieu affirmed that he was. Law enforcement therefore had every reason to believe that Mr. Lieu was the same person with whom they had been messaging.

But Mr. Lieu argues that the names "Dave" and "John" are relatively common names and that the clothing description is too general to support the connection that the agents made. Mr. Lieu's argument fails to recognize, however, that the standard of probable cause "deals with probabilities and depends on the totality of the circumstances." *Pringle*, 540 U.S. at 371. "[P]robable cause does not require certainty, or proof beyond a reasonable doubt, or proof by a preponderance of the evidence." *United States v. Cardoza*, 713 F.3d 656, 660 (D.C. Cir. 2013); *see also Illinois v. Gates*, 462 U.S. 213, 235 (1983) ("Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision."). Instead, all that is required is "the kind of 'fair probability' on which 'reasonable and prudent [people], not legal technicians, act.'" *Florida v. Harris*, 568 U.S. 237, 244 (2013) (quoting *Gates*, 462 U.S. at 238). So, even if any one factor described above might prove too common or innocuous to support a finding of probable cause when viewed in

isolation, when viewed together in the aggregate, they at the very least create a "fair probability" that Mr. Lieu was the same individual with whom agents had been communicating. *Cardoza*, 713 F.3d at 660 (finding probable cause to arrest defendant for drug charges, even though "it remained *possible* that Cardoza would turn out not to be a drug dealer" (emphasis in original)). Therefore, based on all of the circumstances known to law enforcement at the time, they had probable cause to place Mr. Lieu under arrest.

This finding necessarily leads to the inexorable conclusion that the subsequent search of Mr. Lieu's person and the seizure of his cellular telephone were both proper. It is well established that, following a lawful arrest, officers are permitted to search "the arrestee's person and the area within his [or her] immediate control." *Arizona v. Gant*, 556 U.S. 332, 339 (2009) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969), abrogated by *Davis v. United States*, 564 U.S. 229 (2011)). That is precisely what happened here and, in doing so, officers came across Mr. Lieu's cellular telephone. Believing the device to contain relevant evidence, agents were permitted to seize and secure the device. *See Riley v. California*, 134 S. Ct. 2473, 2486 (2014). The law enforcement officers subsequently obtained a search warrant authorizing a forensic examination of the phone, which did in fact contain Mr. Lieu's communications with Detective Palchak and Mr. Lieu's communication with John Doe. Mr. Lieu makes no argument that the search incident to arrest, the seizure of his phone, or the subsequent examination of the phone pursuant to a warrant were in any way improper or violated Mr. Lieu's rights. Accordingly, evidence of Mr. Lieu's cellular phone and the data that it contained need not be suppressed.

**B. Mr. Lieu's Post-Arrest Statements and Evidence Seized from His New York Home**

Mr. Lieu also seeks to suppress his post-arrest statements and evidence seized from his home in New York on additional grounds. The premise of Mr. Lieu's argument is that, during his post-arrest interview with Agents McShane and Cutalo-Patterson, he invoked his right to an attorney. Thus, according to Mr. Lieu, any post-arrest statements he made must be suppressed. Furthermore, he argues that "[e]ven though the [G]overnment obtained a warrant to search Mr. Lieu's New York home, agents did not have a good faith basis to rely on the warrant" because, according to Mr. Lieu, the agents "misled the Court by not disclosing that they procured the statement on which they were relying [in the warrant application] despite Mr. Lieu's invocation of *Miranda* rights." Def.'s Mot. at 5. The Court is unpersuaded for several reasons.

1. Mr. Lieu's Post Arrest Statements

First, it is clear that any statements obtained from Mr. Lieu after his arrest were obtained only *after* Mr. Lieu voluntarily, knowingly, and intelligently waived his rights. The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. In 1966, the United States Supreme Court issued the landmark decision *Miranda v. Arizona*, 384 U.S. 436 (1966), which announced a set of prophylactic measures intended to protect a suspect's Fifth Amendment right from the "inherently compelling pressures" of custodial interrogation. *Id.* at 467. In that case, the Supreme Court reasoned that "[u]nless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice." *Id.* at 458. Thus, under *Miranda*, prior to questioning, a suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either

retained or appointed." *Id.* at 444. If at any time the suspect states that he wishes to remain silent the interrogation must cease. *See Maryland v. Shatzer*, 559 U.S. 98, 104 (2010) (citing *Miranda*, 384 U.S. at 444). Likewise, if the suspect states that he wants a lawyer, the interrogation must immediately stop and it may not resume "until counsel has been made available to him" or "the accused himself initiates further communication, exchanges or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). But "after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation." *Id.* at 484; *see also North Carolina v. Butler*, 441 U.S. 369, 372–76 (1979). It is the Government's burden, however, to show that "the defendant 'voluntarily, knowingly and intelligently' waived his rights." *J.D.B. v. North Carolina*, 564 U.S. 261, 269–70 (2011) (quoting *Miranda*, 384 U.S. at 444, 475–76).

Based on the audio recording of Mr. Lieu's interview with federal agents, the Court has no difficulty finding that the Government has met its burden in demonstrating a valid waiver.[4]

---

[4] Because Mr. Lieu's waiver of rights is so clear from the record, the Court assumes for purposes of this opinion that all of the questions asked constituted "interrogation" under *Miranda*. However, there may be good reason to doubt that assumption for at least some of the questions asked of Mr. Lieu given that they arguably sought only basic identifying information. Standard questions that are unlikely to elicit incriminating responses, such as "where do you live," are not typically considered coercive enough to be constitute an "interrogation." *See e.g.*, *United States v. Edwards*, 885 F.2d 377, 385–86 (7th Cir. 1989) ("In our opinion, questions such as 'what is your name?' and 'where do you live?' will not usually constitute interrogation within the meaning of *Miranda*," even if these questions are asked at the time of arrest, rather than during the booking process); *United States v. Guiterrez*, 92 F.3d 468, 471 (7th Cir.1996) ("Prior to or after arresting a suspect, law enforcement officers may ask preliminary questions as to identity, but they may not conduct a custodial interrogation"); *United States v. Foster*, 227 F.3d 1096, 1102–03 (9th Cir. 2000) ("a definition of interrogation that included any question posed by a police officer would be broader than that required to implement the policy of *Miranda* itself; [o]nly questions reasonably likely to elicit an incriminating response from the suspect amount to interrogation") (citations and quotation marks omitted; punctuation altered for clarity). While other courts have not foreclosed the possibility that such questions may, under certain circumstances, be interrogative in nature, *see United States v. Knope*, 655 F.3d 647, 652 (7th Cir. 2011), the Court need not necessarily resolve that question here because, even if Mr. Lieu's

First, Mr. Lieu's decision to speak with the agents was both knowing and intelligent. A waiver is knowing and intelligent if it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Federal agents advised Mr. Lieu of his right to remain silent and his right to an attorney, both orally and in writing, before asking Mr. Lieu any questions. Mr. Lieu then represented that he understood those rights. Moreover, the audio recording reveals no apparent language barrier impeding Mr. Lieu's ability to communicate with the agents, it appears that Mr. Lieu had no trouble grasping any concepts presented to him, and he spoke intelligently and discerningly throughout his interview. In addition, Mr. Lieu further demonstrated his understanding of the consequences of waiver when he agreed to selectively answer only some questions but not others. And Mr. Lieu himself makes no argument that he either did not understand his rights or that he did not understand the consequence of waiver. Accordingly, the Court finds that Mr. Lieu's waiver of rights was both knowing and intelligent. *See Colorado v. Spring*, 479 U.S. 564, 575 (1987) (holding that "trial court was indisputably correct in finding that [defendant]'s waiver was made knowingly and intelligently within the meaning of *Miranda*" because "there [was] no allegation that [defendant] failed to understand the basic privilege guaranteed by the Fifth Amendment[,] [n]or [was] there any allegation that he misunderstood the consequences of speaking freely to the law enforcement officials").

Moreover, the facts and circumstances surrounding Mr. Lieu's decision to speak with agents after his arrest suggest that it was a voluntary choice and not one borne out of any undue coercion. "Voluntariness turns on whether the 'defendant's will was overborne' when he gave

---

statements were the product of a custodial interrogation, his responses were made after a voluntary, knowing, intelligent waiver of his rights.

his statement." *United States v. Murdock*, 667 F.3d 1302, 1305 (D.C. Cir. 2012) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "[T]he test for this is whether the statement was a 'product of an essentially free and unconstrained choice by its maker.'" *Id.* (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). To assess this question, a court must consider the "totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth*, 412 U.S. at 226. Among other factors, courts should consider "the defendant's age and education, the length of detention, whether the defendant was advised of his rights, and the nature of the questioning." *Murdock*, 667 F.3d at 1305–06 (citing *Schneckloth*, 412 U.S. at 226). But "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver." *Butler*, 441 U.S. at 373.

Here, although Mr. Lieu initially requested a lawyer before proceeding with the interview, he then—only moments later and without prompting from the agents—asked that they have a "conversation" and "run through the questions" without the presence of his lawyer.[5]

---

[5] In the interview, agents asked Mr. Lieu to sign a written waiver of rights after they had orally advised him. This document formed the basis of Mr. Lieu's *Miranda* challenge because it appears that, at some point, someone wrote the word "INVOKED" on the signature line. This notation seems to refer to the fact that Mr. Lieu initially stated he would not answer questions without his lawyer present. However, it does not appear to account for the fact that he then changed his position and invited the agents to proceed with the interview. The Supreme Court has stated that police may resume an interrogation after a defendant invokes his right to counsel if "the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–85. That is, he must "evince[] a willingness and a desire for a generalized discussion about the investigation." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–46 (1983) (plurality). A careful review of the audio from Mr. Lieu's interrogation demonstrates that this is precisely what happened here. Indeed, Mr. Lieu made it quite clear to agents that he was inviting conversation about the circumstances of his arrest and that he wished to proceed with the interview without his lawyer present. The Court has no reason to believe that Mr. Lieu spoke with agents involuntarily or that agents acted in any way improper by proceeding with the interview. Accordingly, the Court has no reason to believe that this document evidences a contravention of Mr. Lieu's rights under *Miranda*.

When the agents asked for clarification, Mr. Lieu confirmed that he was waiving his right to an attorney at that moment. Throughout Mr. Lieu's interview, the agents treated Mr. Lieu with both kindness and respect. The agents attempted to ensure that he was comfortable and spoke with him in a calm and conversational tone. They also repeatedly reassured Mr. Lieu that he was permitted to invoke his Fifth Amendment rights at any time and that he would suffer no ill consequences for doing so. And Mr. Lieu, in fact, did refuse to answer several questions during the interview. Mr. Lieu's ability to discern which questions he wanted to answer is further evidence that his will was not overborne and that his post-arrest statements to the agents were made voluntarily and were not the product of undue coercion. Finally, Mr. Lieu himself makes no argument that he was coerced, intimidated, tricked or cajoled into making any waiver or statement during the interview with agents. For all of these reasons, the Court finds that Mr. Lieu's waiver of his rights was made voluntarily.

Because Mr. Lieu's statements were made only after he was advised of his rights and after Mr. Lieu decided to voluntarily, knowingly, and intelligently waive those rights, the Court finds no reason to suppress Mr. Lieu's post-arrest statements.

2. Evidence Seized from Mr. Lieu's New York Home

The Court's conclusion that Mr. Lieu's Fifth Amendment rights were not violated necessarily resolves, Mr. Lieu's other argument—that the affidavit supporting the warrant application, which sought authorization to search Mr. Lieu's New York home, was defective because it, in part, relied on those statements. But even if Mr. Lieu's statements had been obtained in violation of *Miranda*—which they were not—the Court would nonetheless find that the warrant was valid.

Mr. Lieu's argument is based on the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978). *Franks* involved a defendant's challenge to a warrant affidavit that, according to the defendant, contained false statements. *Id.* at 157–58. The Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155–56. Entitlement to a so-called *Franks* hearing, however, requires a showing that "(1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth." *United States v. Becton*, 601 F.3d 588, 594 (D.C. Cir. 2010) (internal quotation marks omitted). The D.C. Circuit "has extended *Franks* to apply not only where the Government is alleged to have made false statements but also where a defendant alleges that the Government 'knowingly and intentionally (or with reckless disregard) omitted a fact that would have defeated probable cause.'" *United States v. Williams*, 827 F.3d 1134, 1146 (D.C. Cir. 2016) (quoting *United States v. Glover*, 681 F.3d 411, 419 (D.C. Cir. 2012)).

Here, Mr. Lieu argues that "[t]he agents misled the Court by not disclosing that they procured the statement on which they were relying despite Mr. Lieu's invocation of *Miranda* rights." Def.'s Mot. at 5. But, as discussed above, Mr. Lieu made a knowing, intelligent, and voluntary waiver of his *Miranda* rights during his interview with agents. Thus, the Court finds that the Defendant has not identified any misstatement or omission in the warrant affidavit, let alone an omission that was knowing, intentional, or made with reckless disregard. Accordingly, Mr. Lieu's challenge fails on this basis alone.

But even if there was an omission, the omission was not material to the issue of probable cause. The Supreme Court has described the assessment of probable cause for purposes of a search warrant as "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Judges "need not confine their evaluations within rigorous legalistic boundaries but instead may use their common sense." *United States v. Davis*, 617 F.2d 677, 692 (D.C.Cir.1979). Moreover, courts "ordinarily do not suppress evidence seized pursuant to a search warrant unless the warrant affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Cardoza*, 713 F.3d 656, 659 (D.C. Cir. 2013) (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).

Here, the warrant application at issue contained sufficient grounds to believe that there may be evidence of a crime at Mr. Lieu's home, even if the Court were to purge Mr. Lieu's statements from the affidavit. The warrant application sought authorization to search Mr. Lieu's New York home for evidence that Mr. Lieu had received or possessed child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A. The only statements from Mr. Lieu's interview reported in the warrant application were Mr. Lieu's confirmation that he lived in New York with his wife, two stepchildren, and biological daughter and that he was in the D.C. area on business when he was arrested. The sole import of this information for purposes of the probable cause determination would seem to be that he lived in New York—the place to be searched.

But even without Mr. Lieu's statements, the affidavit supporting the warrant application gave ample reason to believe that there may be evidence of a crime at his New York residence. During Mr. Lieu's conversation with the undercover agent, Mr. Lieu apparently sought to

provide Detective Palchak images of child pornography as a means of demonstrating that he was not law enforcement or otherwise to prove that he was serious about meeting with the supposed father. Mr. Lieu wrote "ok . . . . let me find some more proof for ya," but stated that "all the ones [he] [had] are on another computer," which he indicated were "in [his] NY apartment." Likewise, during their discussion of a series of child pornographic videos known as "Vicky videos," Mr. Lieu indicated that he had one such video "in [his] other computer." According to the affidavit, at the time of Mr. Lieu's arrest, he was in possession of a valid New York state driver's license, which indicated a current address in Camillus, New York. Aff. ¶ 24. Subsequent investigation confirmed that all of Mr. Lieu's vehicles were registered at that address and a woman living at the address confirmed that she was married to Mr. Lieu. Aff. ¶ 25. Consequently, the other details of the affidavit provided ample support for a finding of probable cause and issuance of the warrant, even when discounted for Mr. Lieu's statements. Thus, the Court finds that the items and materials seized from Mr. Lieu's home were properly seized pursuant to a valid warrant and that Mr. Lieu has not identified any legitimate basis upon which the items should be suppressed.

### C. Admissibility of Mr. Lieu's Prior Acts

Having found no violations of the defendant's constitutional rights and no reason therefore to suppress any evidence, the Court must now address the question raised by the Government's motion: whether evidence of certain prior bad acts may be admitted for a permissible purpose under the Federal Rules of Evidence. The Government seeks to introduce evidence pertaining to three matters that it claims are relevant to the charges against Mr. Lieu. First, the Government seeks admission of evidence that Mr. Lieu sexually abused his stepdaughter when she was between the ages of seven and ten years old. *See* Gov't Mot. at 1.

Second, the Government wishes to introduce evidence showing that Mr. Lieu possessed 397

images and 19 videos depicting child pornography on an electronic media storage device at his

home.  *See* Gov't Mot. at 1, 9.  Lastly, the Government would like to introduce evidence that, at

the same time that Mr. Lieu was communicating with the undercover agent, he was

simultaneously communicating with someone else about his sexual interest in children.  *See*

Gov't Mot. at 1.  The Court finds that evidence concerning all of these matters may be properly

introduced variously under Rules 404(b) and 414 of the Federal Rules of Evidence, subject to a

limiting jury instruction.

### 1. Rules 404(b)

The Court first considers the admissibility of the proposed evidence under Rule 404(b).

Rule 404(b) generally prohibits admission of evidence of other crimes, wrongs, or acts to prove

that the defendant has a propensity to commit the charged crime.  However, evidence of those

other acts may be admissible for other purposes, including proving motive, intent, knowledge,

identity, or absence of mistake.  Fed. R. Evid. 404(b).  "Although the first sentence of Rule

404(b) is framed restrictively, the rule itself is quite permissive, prohibiting the admission of

other crimes evidence in but one circumstance—for the purpose of proving that a person's

actions conformed to his character."  *United States v. Bowie*, 232 F.3d 923, 929–30 (D.C. Cir.

2000) (internal citations and quotations omitted).  Thus, Rule 404(b) is properly regarded as one

of "inclusion rather than exclusion."  *Id.* at 929.

In addressing admissibility of prior acts under the Federal Rules, this Circuit employs a

two-step analysis.  "Under the first step, which addresses Rule 404(b), '[the court] must

determine whether the evidence is relevant to a material issue other than character."  *United*

*States v. Burch*, 156 F.3d 1315, 1323 (D.C. Cir. 1998) (quoting *United States v. Mitchell*, 49 F.3d

769, 775 (D.C. Cir. 1995)). "'If so, [the court] proceed[s] to the second inquiry,' under Federal Rule of Evidence 403, 'whether the probative value is substantially outweighed by the prejudice.'" *Id.* (quoting *Mitchell*, 49 F.3d at 775).

In this case, Mr. Lieu is charged with distribution of child pornography and travel with intent to engage in illicit sexual conduct. Importantly, the distribution charge requires that the Government demonstrate that Mr. Lieu sent the images of child pornography to Detective Palchak "knowingly" and the travel offense requires that he traveled to the District "for the purpose of engaging in [] illicit sexual conduct with another person." Consequently, Mr. Lieu's state of mind at both the time that he sent the images to Detective Palchak and then later traveled to the District of Columbia is likely to be a central issue at trial. Indeed, it is often true that, in cases such as this, a defendant's mental state is a highly contested issue and usually a key aspect of the accused's defense at trial. "Federal courts repeatedly have held that the government may offer evidence in its case-in-chief in anticipation of an expected aspect of the defense." *United States v. Curtin*, 489 F.3d 935, 940 (9th Cir. 2007). Upon consideration of the categories of evidence that the Government seeks to admit, the Court is persuaded that the proposed evidence is relevant to material issues other than character with regard to all charges against Mr. Lieu—namely, motive, intent, knowledge, and absence of mistake.

"A prior bad act does not have to involve the *exact* same intent of the charged offense in order to be relevant." *United States v. Hite*, 916 F. Supp. 2d 110, 116 (D.D.C. 2013) (citing *United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003)) (emphasis in original). "Evidence of a similar act must meet a threshold level of similarity in order to be admissible to prove intent," but that evidence is not required to have "exact congruence." *Long*, 328 F.3d at 661. Indeed, "admissible bad acts evidence need not show incidents identical to the events charged so long as

they are closely related to the offense, and are probative of intent rather than mere propensity." *Id.* Moreover, "to be relevant, the Government's proposed Rule 404(b) evidence does not have to *prove* the Defendant's intent, it need only make it more probable that the Defendant possessed the requisite intent." *Hite*, 916 F. Supp. 2d at 117 (emphasis in original). "What matters is that the evidence be relevant 'to show a pattern of operation that would suggest intent' and that tends to undermine the defendant's innocent explanation." *Long*, 328 F.3d at 661.

In the context of crimes involving sexual exploitation of minors, it is generally accepted in this Circuit and elsewhere, that "evidence of a defendant's sexual attraction to children (or teenagers) is probative of the specific intent element of criminal statutes involving sexual activity with minors." *Hite*, 916 F. Supp. 2d at 117 (citing *United States v. Chambers*, 642 F.3d 588, 595 (7th Cir. 2011)). Indeed, "[w]hether or not the Defendant is sexually attracted to children, though not necessarily dispositive, is *relevant* to the broader question" of whether the defendant possessed the requisite intent to engage in a crime involving sexual predation of children. *Id.* (emphasis in original); *see also United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) (evidence demonstrating "sexual interest in children . . . serve[s] as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children"); *United States v. Moore*, 425 F. App'x. 347, 352 (5th Cir. 2011) ("[E]vidence of other sexual offenses committed by the defendant does not need to be similar in every respect to the charged offense"—it only "needs to be probative as to some element of the charged offense." (citing *United States v. Dillon*, 532 F.3d 379, 389 (5th Cir. 2008))); *United States v. Curtin*, 489 F.3d 935, 952 (9th Cir. 2007) ("[C]ontextual and circumstantial evidence becomes acutely relevant to a defendant's material state of mind 'prior to his contact' with the object of his sexual attention and . . . such evidence is not only admissible, but may be critical."). In this case, each of the

prior acts that the Government seeks to introduce demonstrates Mr. Lieu's sexual attraction to children and are therefore relevant to questions of intent and knowledge with respect to each of the crimes with which he is charged.

*a. Collection of Child Pornography*

There is, of course, an obvious connection between Mr. Lieu's possession of child pornography and his state of mind with respect to the charge involving the distribution of child pornography. Indeed, Mr. Lieu's possession of other child pornography demonstrates a sexual interest in children that tends to make it more probable that Mr. Lieu distributed images of child pornography knowingly and that it was not merely a mistake. *See e.g., United States v. Brown*, 862 F.2d 1033, 1038 (3d Cir. 1988) (finding "no difficulty with the admission into evidence of the child pornography found . . . in [defendant]'s home" in case involving charge of knowing receipt of child pornography because it was relevant to show "proof of . . . intent, . . . knowledge, . . . or absence of mistake or accident." (quoting Fed. R. Evid. 404(b) (alterations in original)); *Long*, 328 F.3d at 663 ("It hardly can be denied that 'in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged.'" (quoting *United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001))).

Likewise, Mr. Lieu's collection is relevant to the travel charge and the question of Mr. Lieu's "purpose" in meeting Detective Palchak. In cases where the charged crime involves a question of whether the defendant intended to have sexual contact with a minor, courts routinely find that possession of such material is admissible under Rule 404(b) as probative of the defendant's sexual attraction to children. *See e.g., Hite*, 916 F. Supp. 2d at 118 ("Defendant's access to child pornography is relevant to the Defendant's intent in this case insofar as it is

probative of his sexual attraction to children" in case involving two counts of attempted coercion and enticement of a minor.); *United States v. Hardy*, 520 F. App'x. 835, 840 (11th Cir. 2013) (admission of evidence of defendant's prior possession of child pornography under Rule 404(b) was not an abuse of discretion because "possession of child pornography depicting young boys and the charged offense involve the same mental state, as both involve a sexual interest in young boys[,]" which "makes it more likely that he intended to persuade, induce, entice, or coerce a 12-year-old boy to engage in sexual activity with him"); *United States v. Brand*, 467 F.3d 179, 197 (2d Cir. 2006) ("[T]he fact that [defendant] had images of child pornography on his computer made it more probable than it would be without the evidence that [defendant]'s intent was to travel to New York to engage in illicit sexual activity and to attempt to entice a minor to engage in sexual activity." (internal citations, quotation marks, and alterations omitted)).

In his opposition to the Government's motion, Mr. Lieu makes a rather puzzling argument concerning his access to the child pornography. He argues that the child pornography is not relevant because he did "not have [] access to images and videos found on a computer in New York . . . because the government alleges that he was in the Districts of Columbia and Maryland." Pl.'s Opp'n at 1. Mr. Lieu emphasizes that, while the hard drive was found in his home, it is a home that he "shared . . . with other people." Pl.'s Opp'n at 1. As we know, those other people were his wife, two stepdaughters, and biological daughter. Mr. Lieu does not seriously contend that the materials in fact belonged to any of them. Indeed, there is every reason to find that Mr. Lieu was in constructive possession of the child pornography because it was found in his home and he specifically linked himself to it when he told Detective Palchak that this material could be found there. *See United States v. Dorman*, 860 F.3d 675, 681 (D.C. Cir. 2017) ("Constructive possession of contraband found in a shared space in the defendant's

home can be shown only where it was kept in plain view . . . or where there is additional evidence, including the defendant's presence and conduct at the time of the search or an item in his control, linking him to the contraband." (internal citations omitted)).  More importantly, whether Mr. Lieu had immediate physical access to the material at the exact moment of his alleged offenses does not detract from its relevance on the issues related to his state of mind.  His possession alone is indicative of his sexual interests in children and it is especially probative of his state of mind as to the charged offenses because, during his conversation with Detective Palchak, he specifically referenced his interest in these photographs and videos.

While the Court finds that the images likely have significant probative value, the Court will at this time reserve judgment as to the extent of their admissibility under Rule 403 because the Government has not yet identified the images that it wishes to present at trial or the form in which it wishes to present them.  As discussed above, a defendant's possession of child pornography is generally admissible under Rule 404(b) in cases such as this because such evidence is regarded to be probative of matters of motive, intent, knowledge, and absence of mistake.  Moreover, the probative value of such material may be heightened if they are, for example, representative of the conduct at issue in the case.  *See Hite*, 916 F. Supp. 2d at 119 ("The revised exhibit should include images accessed in 2012 to the extent they are representative of the type of sexual conduct the Defendant discussed with JP.").  On the other hand, the Government has identified literally hundreds of photographs and nearly twenty videos depicting sexually explicit images of children.  Thus, there is a rather apparent danger that presentation of each photograph and video would likely be needlessly cumulative.  And while "the risk of unfair prejudice is minimized by the 'already-graphic nature of the case,'" *Hite*, 916 F. Supp. 2d at 120 (quoting *United States v. Wolford*, 386 F. Appx. 479, 484 (5th Cir. 2010)), the

Court cannot fully and properly weigh the probative, prejudicial, and redundancy value of the images without first having reviewed precisely what it is that the Government intends to introduce at trial, *see United States v. Curtin*, 489 F.3d 935, 957 (9th Cir. 2007) ("The inflammatory nature and reprehensible nature of these abhorrent[,] [prurient] stories, although generally relevant, is such that a district court making a Rule 403 decision must know precisely what is in the stories in order for its weighing discretion to be properly exercised and entitled to deference on appeal.").  Accordingly, the Court finds that, as a general matter, the images and videos of child pornography found at Mr. Lieu's home are admissible under Rule 404(b), but this admissibility is subject to this Court's review of the evidence so that it may determine the number of images that might be admitted and how they may be presented.

### b.  *Prior Abuse of Mr. Lieu's Step Daughter*

Like the evidence of Mr. Lieu's possession of child pornography, Mr. Lieu's alleged abuse of his stepdaughter is probative of issues of knowledge, intent, motive, and absence of mistake with respect to the charged crimes.  Indeed, like possession of child pornography, a prior act of molestation demonstrates a prurient interest in children, and courts have frequently admitted evidence of such acts under Rule 404(b) in cases involving charges of child pornography and crimes involving travel for purposes of engaging in illicit sexual misconduct. *See e.g., United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997) ("We cannot say that the district court abused its discretion in admitting the prior acts evidence under Rule 404(b)" because "the government had to prove intent to travel interstate to sexually abuse the minor relative and the stepdaughters' testimony suggests a similar pattern of sexual abuse of female minor relatives made possible by exploitation of familial authority."); *United States v. Dhingra*, 371 F.3d 557, 565 (9th Cir. 2004) ("[t]estimony regarding sexual contact with a minor is

particularly relevant in the context of a prosecution under § 2422(b) because intent is a key element of a crime" and "[w]hat could be more probative of illicit purpose than carrying through with the sex act itself?"); *United States v. Russell*, 662 F.3d 831, 846–47 (7th Cir. 2011) (holding that evidence of prior molestation was allowed under Rule 404(b) to show defendant's motive in taking obscene photographs of children).

Under the circumstances presented here, the Court concludes that the probative value of the evidence is not substantially outweighed by undue prejudice. First, the Court is convinced that evidence of Mr. Lieu's alleged assault on his stepdaughter is particularly salient on the issue of Mr. Lieu's intent and knowledge. To start, this alleged conduct occurred within approximately four years of the alleged crimes at issue, which is not so remote in time as to have lost all relevance to the crimes at issue. *See e.g., United States v. Knope*, 655 F.3d 647, 657 (7th Cir. 2011) ("The other acts occurred within the past three years, sufficiently close in time to his arrest to be relevant to the offense."). Its relevance is further confirmed, however, by the fact that Mr. Lieu expressly raised this alleged abuse in his communications with Detective Palchak and, later, with John Doe. Because Mr. Lieu himself raised this conduct in his communications, the truth and veracity of his assertions on that topic are highly informative of his state of mind. Indeed, by corroborating these interactions, it casts doubt on the notion that his communications with the detective were merely a manifestation of harmless sexual fantasy or some other morbid curiosity and were, in fact, a reflection of his actual intent and desires. In addition, evidence that Mr. Lieu abused his stepdaughter between the ages of seven and ten demonstrates, not just a sexual interest in children, but an actual and specific sexual interest in female children of approximately that age. This is relevant because it is consistent with the crimes with which he is charged. Indeed, the images that he sent to Detective Palchak depicted girls between the ages of

six and twelve years old and he is accused of traveling into the District to have sex with a nine-year-old girl.  Thus, it paints a picture that Mr. Lieu sent images of child pornography knowingly and that he traveled to the district with an actual and serious purpose to abuse a female child of that age.

Weighing against this rather significant and probative evidence is minimal prejudice. While the alleged abuse would certainly seem abhorrent, based on the representations made to the Court, it does not appear that the evidence will be especially graphic in the context of the crimes with which Mr. Lieu has been charged.  Likewise, the Court has no reason to believe that the testimony on the topic will be especially voluminous or otherwise dominate the trial. Accordingly, the Court finds that evidence of Mr. Lieu's alleged abuse of his stepdaughter is admissible under Rules 404(b) and 403.

### c. Mr. Lieu's Communications with John Doe

Finally, the Court finds that evidence that Mr. Lieu engaged in explicit discussions with John Doe is properly admissible under Rules 404(b) and 403 and is relevant to the issues of knowledge, intent, motive, and absence of mistake.  Mr. Lieu initially made contact with John Doe through the Craigslist website and the two then enthusiastically discussed their mutually shared sexual interest in children.  Thus, at a minimum, these communications demonstrate Mr. Lieu's sexual interest in children, and are therefore relevant to Mr. Lieu's knowledge at the time he sent the images of child pornography to Detective Palchak.  Moreover, in light of the fact that Mr. Lieu is charged with using the Craigslist website to arrange a meeting with a supposed father of a young girl for the purpose of sexually abusing a child, Mr. Lieu's communications with John Doe are sufficiently similar to the charged conduct to permit a reasonable jury to draw from it an inference that Mr. Lieu was motivated by a sexual intent when he traveled into the District of

Columbia to meet Detective Palchak and his fictitious daughter. *See e.g., Hite*, 916 F. Supp. 2d at 121 ("[E]vidence the Defendant engaged in explicit discussions of sexual contact with minors, regardless of whether or not he followed through with plans to meet in person, is probative of his intent to entice or coerce the minors to engage in illicit sexual activity."); *United States v. McDarrah*, 351 F. App'x. 558, 561, 563 (2d Cir. 2009) (holding that trial court properly admitted four emails that defendant sent to "erotic services advertisements on Craigslist" under Rule 404(b) because they were "relevant to his knowledge and intent, because he wrote those emails to girls he knew could be minors . . . and his emails showed his interest in actual sexual conduct"); *Knope*, 655 F.3d at 657 (holding that chats showing that defendant "had expressed interest in having sex with minors in the past, that he had attempted to meet with at least one minor [] for this purpose, and that he attempted to distinguish between actual minors and other who might pose as minors on the internet . . . was relevant to establishing [defendant]'s knowledge, intent, and lack of mistake") (citing *Sebolt*, 460 F.3d at 917). And, just as he admitted to Detective Palchak, Mr. Lieu admits in this conversation with John Doe that he had sexual contact with his stepdaughter, further adding to its probative value on the issue of intent, knowledge, and absence of mistake. *See Hite*, 916 F. Supp. 2d at 122–23 (defendant's "repeated admission" in an electronic chat transcript that "in the past he had sexual contact with an eleven year-old boy" was "highly relevant to the Defendant's intent to actually coerce or entice the minors at issue in this case."). But perhaps the most probative aspect of this correspondence is the fact that it occurred contemporaneously with Mr. Lieu's conversation with the undercover agent and Mr. Lieu expressly referenced his upcoming meeting with the undercover agent. In fact, Mr. Lieu expressed great enthusiasm for his upcoming meeting with the agent and his fictitious daughter and gave no indication that his desire to meet them involved fantasy rather

than actual intent. Thus, for these reasons, the conversation is highly probative of Mr. Lieu's state of mind around the time of his alleged offenses.

After closely reviewing the transcript of Mr. Lieu's conversation with John Doe, the Court finds that the risk of unfair prejudice does not substantially outweigh its probative value. As noted above, the transcript of Mr. Lieu's communications with John Doe is highly probative of Mr. Lieu's state of mind—an issue that is likely to be of critical importance in this case. Although the graphic nature of the conversation may be prejudicial in some sense, the conversation is relatively brief and, given that the subject matter of this case is centered on sexual exploitation of minors, any prejudice to Mr. Lieu cannot be said to be wholly "unfair." *See id.* at 123 ("The subject matter of the Defendant's conversations with Aussie creates some risk of prejudice," but "in a case that by definition concerns sexual activity with minors, the discussions with Aussie are not *unduly* prejudicial." (emphasis in original)). Accordingly, the Court finds that Mr. Lieu's conversation with John Doe is admissible under Rule 404(b) and 403.

### 2. Rule 414

In addition to Rule 404(b), the Government argues that evidence of Mr. Lieu's collection of child pornography and his abuse of his stepdaughter are independently admissible under Rule 414. As discussed above, the admissibility of a defendant's prior acts is ordinarily governed by Rule 404, which prohibits using evidence to show that the defendant has a propensity to act in a certain manner and that the defendant, in fact, acted in accordance with that propensity in a given instance. Fed. R. Evid. 404(b)(1),(2). But, cases involving "child molestation" are different. Rule 414(a) provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation" and emphasizes that "[t]he evidence may be considered on any matter to which it is

relevant." Fed. R. Evid. 414(a). Thus, Rule 414 "create[s] an exception to the general ban on propensity evidence contained in Rule 404(b)." *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006); *see also United States v. Jones*, 748 F.3d 64, 70 (1st Cir. 2014) ("Rule 414 removes Rule 404(b)'s blanket ban on propensity inferences in child-molestation cases."). In fact, Rule 414 embodies a "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997). The Rule's historical notes suggest that "[t]o implement the legislative intent, the courts must liberally construe these rules to provide the basis for a fully informed decision of sexual assault and child molestation cases, including assessment of the defendant's propensities and questions of probability in light of the defendant's past conduct." Fed. R. Evid. 413 Historical Notes. Nevertheless, "Rule 414 evidence remains subject to Rule 403's balancing between probative value and unfair prejudice." *United States v. Joubert*, 778 F.3d 247, 254 (1st Cir. 2015).

To determine the applicability of Rule 414, the Court must first consider the threshold issue of whether this is a criminal case in which Mr. Lieu has been "accused of child molestation," as the Rule defines that term. Under Rule 414, "child molestation" is defined to include, among other things, crimes under federal law involving "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child," "any conduct prohibited by 18 U.S.C. chapter 110," as well as certain other crimes of a sexual nature committed with children[6] or attempts or conspiracies to engage in such conduct. *See* Fed. R. Evid. 414(d)(2).

In this case, only one of the two charges against Mr. Lieu comes within Rule 414's definition of "child molestation." Count One of the superseding indictment, which concerns Mr. Lieu's alleged distribution of child pornography, is a crime under 18 U.S.C. chapter 110 and

---

[6] The term "child" is further defined as "a person below the age of 14."

therefore constitutes "child molestation" under Rule 414. *See* 18 U.S.C. § 2252(a)(2). On the other hand, Count Two, which involves travel with intent to engage in illicit sexual conduct, is found in chapter 117 of Title 18. Thus, it does not fall within Rule 414's inclusion for crimes found in chapters 109A or 110.[7] Moreover, the acts alleged for purposes of Count Two do not fall within the other acts enumerated in Rule 414, which generally involve sexual contact with persons under the age of 14. *See* 18 U.S.C. § 2423(b). The Government makes no argument for why Rule 414 evidence should be considered for purposes of Count Two. Thus, to the extent that Rule 414 applies, it applies only to evidence used for purposes of Count One.

The next step then is to assess whether the evidence that the Government seeks to admit is "evidence that the defendant committed [another] child molestation" and whether it is relevant to the current charge. *See* Fed. R. Evid. 414(a). The Government seeks to admit the evidence of Mr. Lieu's collection of child pornography and evidence that Mr. Lieu sexually abused his stepdaughter when she was seven-years-old. *See* Gov't Mot. at 8–10. The Court has no trouble finding that such matters constitute "child molestations" for purposes of the Rule and that they are relevant to Count One.

First, the images and videos of child pornography discovered at Mr. Lieu's home clearly constitute "child molestation" under the Rule because, like Count One, knowing possession of child pornography is conduct prohibited by 18 U.S.C. chapter 110. *See* 18 U.S.C. § 2252A(a)(5)(B). Moreover, as discussed in greater detail above, his possession of this material is certainly relevant to the distribution charge for it is helpful in proving intent, knowledge, and absence of mistake or accident. *See Brown*, 862 F.2d at 1038 (finding "no difficulty with the

---

[7] Although the Government initially claimed in its motion that the Count Two was a crime under chapter 110, it notified the Court at oral argument that this claim was in error.

admission into evidence of the child pornography found . . . in [defendant]'s home" in case involving charge of knowing receipt of child pornography because it was relevant to show "proof of . . . intent, . . . knowledge, . . . or absence of mistake or accident." (quoting Fed. R. Evid. 404(b) (alterations in original)); *Long*, 328 F.3d at 663 ("It hardly can be denied that 'in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged.'" (quoting *United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001))).

Likewise, evidence that Mr. Lieu sexually abused his seven-year-old stepdaughter is also properly admissible under Rule 414 for purposes of Count One. According to the Government, Mr. Lieu's stepdaughter, in her discussions with police, indicated that Mr. Lieu had "engaged in sexual acts with her, beginning from when she was seven years old until she was ten years old." Gov't Mot. at 9. Specifically, she claimed that Mr. Lieu would "'tuck her in' at night and have her touch his unclothed penis before bed." Gov't Mot. at 9. Such conduct constitutes "child molestation" as it is a "crime under federal law" involving "contact between the defendant's genitals . . . and [a] part of a child's body." Fed. R. Evid. 414(d)(2)(D); *see also* 18 U.S.C. §§ 2241(c) (aggravated sexual abuse with children), 2244(5) (abusive sexual contact). It is also conduct prohibited by 18 U.S.C. § 109A that was committed with a child under the age of 14. Fed. R. Evid. 414(d)(2)(A). And, as discussed above, Mr. Lieu's alleged abuse of his daughter is relevant to the charged offenses because, like the evidence of child pornography found in his home, if true, it demonstrates Mr. Lieu's sexual interest in children and is admissible to prove his propensity to possess and distribute prurient materials involving children. *See United States v. Foley*, 740 F.3d 1079, 1087–88 (7th Cir. 2014) ("Under Rule 414, Minor Male B's testimony

about his past molestation was admissible to prove [defendant]'s propensity to produce and possess child pornography under federal law."); *United States v. Moore*, 425 F. App'x. 347, 352 (5th Cir. 2011) (holding that, in case where defendant was charged with receiving and possessing child pornography, trial court did not abuse discretion in admitting "the testimony and diary excerpts of his stepdaughter, who alleged that [defendant] had molested her when she was twelve," to prove that defendant had a "sexual interest in children" under Rule 414); *United States v. Bentley*, 475 F. Supp. 2d 852, 858 (N.D. Iowa 2007) (admitting Rule 414 evidence because "[i]f the jury finds that Defendant sexually molested [victims], there would be evidence that Defendant has a sexual interest in children and thus has a propensity to commit the crimes alleged in the Second Superseding Indictment," which are production, possession and transportation of child pornography.)

Consequently, the Court finds that evidence of Mr. Lieu's collection of child pornography and his alleged abuse of his stepdaughter may be properly admitted under Rule 414 and may be used to demonstrate propensity with respect to Count One,[8] but only so long as the

---

[8] There is conflicting authority on the issue of how evidence of "child molestation" may be used in cases in which some, but not all, of the charges against a criminal defendant amount to "child molestation." Some courts have held that the evidence may only be considered in relation to the crimes that fall within Rule 414's definition. *See United States v. Schuttpelz*, No. 07-20410, 2010 WL 363319, at *1 (E.D. Mich. Jan. 22, 2010) ("Insofar as Congress, in FRE 414, requires admission at trial of evidence of a prior child molestation offense[], the Court finds admissible Defendant's prior conviction, noted by the Government-but only as to the Counts that come under 414"). Other courts, however, have emphasized the sweeping language that Congress employed in the rules specific to sexual assaults and child molestations and the legislative intent to interpret those rules broadly. Indeed, they point out that Rules 413 and 414 permit evidence of certain prior acts to be admitted in any "*case* in which a defendant is accused of" certain sex crimes and broadly permits the evidence to be "considered on *any matter* to which it is relevant." *See United States v. Boyajian*, No. 09-933, 2012 WL 4094977, at *10 n.8 (C.D. Cal. Sept. 17, 2012) ("[a]lthough defendant contends that Count One does not charge defendant with an act of sexual assault and therefore the Rule 413 evidence is inadmissible as to that offense, Rule 413 does not differentiate between or among counts in an indictment," rather "the plain language of the statute is that prior acts are admissible in any 'case' in which a

probative value of this evidence is not substantially outweighed by the danger of unfair prejudice under Rule 403, an issue discussed in greater detail *supra*.

### 3. Jury Instruction

Finally, the Court finds that it is appropriate in this case to issue a limiting jury instruction concerning the evidence of Mr. Lieu's prior acts. In cases such as this, courts often issue these types of instructions as a means of diminishing the danger of unfair prejudice to defendants. *See e.g., United States v. Cooke*, 675 F.3d 1153, 1157 (8th Cir. 2012) ("Also, the district court gave a limiting instruction that diminished the danger of prejudice." (citing *United States v. Strong*, 415 F.3d 902, 906 (8th Cir. 2005))); *Hite*, 916 F. Supp. 2d at 126 ("the Court shall instruct the jury as to the limited purposes for which the evidence is admitted, at the time of admission and in the final instructions, which substantially limits any risk of unfair prejudice." (citing *Long*, 328 F.3d at 662)). Indeed, the D.C. Circuit has noted that these types of limiting instructions "ordinarily suffice to protect the defendant's interests." *Long*, 328 F.3d at 662. Therefore, the Court will instruct the jury, both at the time that the prior acts evidence is admitted and in the final instructions, as to the limited purposes for which the evidence may be considered. The parties are encouraged to provide the Court with proposed instructions for this purpose.

---

defendant is so accused."). Nevertheless, this Court sees no need to resolve this split of authority here because, even though the travel offense does not independently come within Rule 414's definition of "child molestation," as discussed above, a jury may properly consider evidence of Mr. Lieu's collection of pornography and his alleged sexual abuse of his stepdaughter as to that charge under Rule 404(b).

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Lieu's motion to suppress and

**GRANTS** the Government's motion to admit.  An order consistent with this Memorandum

Opinion is separately and contemporaneously issued.

Dated:  February 8, 2018                                          RUDOLPH CONTRERAS
                                                                 United States District Judge